## Case No. 6,839.

### HUGGINS v. HUBBY et al.

[3 West. Law Month. 347.]

Circuit Court, N. D. Ohio. March Term, 1861.

PATENTS—INFRINGEMENT—WHAT CONSTITUTES AN IMPROVEMENT—SPECIFICATION.

1. What constitutes an improvement, such as will sustain a patent for an improved machine, or for improvement in a machine: Those phrases have the same legal import.

2. To sustain a patent for an improvement, it must effect the same object in a better, cheaper, more expeditious, or more beneficial manner than the instrument improved, or it must effect some further or other beneficial object in connection with the former.

3. Where a patentee, in his specification, claims an improvement, and describes the entire machine, he is not to be understood to claim as new that which was well known to be already in use.

4. Where an inventor claims in his specification, of an improvement, to produce a particular result, as the object of his invention, by the means that he sets forth in his specification, a patent thereon granted is not construed to protect each several particular entering into the improvement, distributively considered; but only the combination of the whole, as one invention.

5. In such case, the use of one of the parts or devices entering into the combination claimed to be invented, without the others, is no violation of the patent.

6. It is immaterial what the claim of an inventor in his summary is if the foundation for such claim is not made in the descriptive part of the specification.

[This was a suit by Sylvester Huggins against L. M. Hubby and others to recover damages for the infringement of a patent.]

Willey & Carey, for plaintiff.

Ranney, Backus & Noble and Mr. Ellsworth, for defendants.

WILSON, District Judge. This action is brought to recover damages for an alleged infringement of a right to an "Improvement in Flour Packers," secured to Nathan Kinman and his assigns, by letters patent, issued Oct. 30th, 1849. The plaintiff is the assignee of the patentee. The validity of the patent, and the plaintiff's title and right to sue for its violation, were facts admitted, on the trial of the cause.

The whole controversy between the parties relates simply to the question, whether, the defendants, in the use of their apparatus for packing flour in the National Mills at Cleveland have infringed upon the right secured to the plaintiff by the letters patent of Nathan Kinman. It therefore becomes necessary to examine the entire specifications connected with this patent, in order to ascertain the scope and purpose of the invention, and thereby determine the extent of the claim and exclusive right secured to the plaintiff. In the schedule attached to the patent, Kinman declares that he "has invented a certain new and useful improvement in the apparatus for packing flour." And he says, that "the most important element in packing flour, in larger mills, is expedition; and however perfect any apparatus may be in packing, if it has not this great desideratum, it is useless in such situations. The great object, therefore, of my improvement is, to give greater expedition to the process of packing flour. than has heretofore been done, retaining at the same time such parts of the old and well known apparatus for packing as are necessary to carry out my designs."

He then specifies the structure of the entire machine in all its parts, and the mode of operating it, as follows: "At a proper distance from the packing-floor, I suspend a tube which will contain about a barrel of flour, or a little more: This tube is somewhat larger at the top than at the bottom, which is made just to fit into the top of the barrel, the upper end of the tube connecting with a chest or reservoir of sufficient capacity to hold the bolt of many hours grinding: Directly under the tube is a small moveable platform on which the barrel to be filled is placed; and this platform is raised by means of a lever, till the barrel slips over the lower end of the tube, where it remains till it is packed. The packing apparatus consists of a shaft that extends up vertically through the centre of the tube, to a sufficient height above the chest which contains the flour to be packed. It will vary from fifteen to forty feet, according to the size of the chest through which it passes. It has eight (more or less) arms or inclined blades, radiating in different directions from it, one above the other. near its lower end. This shaft is made hollow, and is open at the bottom, and at the top has lateral holes into it; above which it is solid, and has a groove cut into it on each side. This solid part of the shaft passes up through the hollow shaft of a mitre wheel that has its bearings in two bridge trees between which it is located. Two friction wheels are inserted in the hollow shaft of this mitre wheel, that enter the above named grooves, and guide and turn the grooved shafts. One half the thickness of each of the bridge trees is cut large enough for a bearing for the shaft of the mitre wheel, the other serving as a bearing for the fluted shafts, by which it is steadied. The mitre wheel has another working into it on a horizontal shaft, by which the whole is driven; the last named wheel being looser on the shaft with which it is connected by a clutch of ordinary construction, that is moved by a bent lever. The shaft is suspended at its upper end by a swivel to a lever, which has a connection rod affixed to its other end, by which the shaft is raised and lowered. The operation is as follows: The chest is

filled with flour—say several hundred barrels—which passes down into the tube. A barrel is placed under the tube, and the shaft is lowered into it; and being hollow, permits the air to escape through it from the barrel, by which the dust and waste occasioned by the escape of air through the flour at the sides is avoided. When the shaft reaches the lowest point, a collar thereon strikes the bent lever, and clutches the barrel-gearing into the prime mover, and this causes the shaft to revolve and pack the flour, by means of the inclined blades, into the barrel, and at the same time gradually rise up into the tube where it also packs the flour, and condenses it ready for the next operation. As soon as the lower blades on the shaft have risen to a level with the bottom of the tube, there is another collar set on the shaft, so as to strike the bent lever, and throw the clutch out of gear and stop the revolution of the shaft. The barrel of packed flour is then lowered on the platform on which it rests, and breaks off from the main body in the tube that is retained by means of the blades in the shaft. A new barrel is then put upon the platform in place of the one filled, and it is raised up to the tube. The shaft is then lowered again, carrying with it the condensed flour in the tube, and the process again commences by the revolving of the shaft; but inasmuch as the barrel is filled with flour previously condensed, it is packed, and the shaft ascends more rapidly, than if the previous condensation had not taken place. The process is repeated with each succeeding barrel till the whole of the flour contained in the chest is packed." He then sums up, what he claims as the novelty of his invention, as follows: "Having thus fully described my improved apparatus, and its mode of operation, what I claim therein as new, and for which I desire to secure letters patent, is—First, the packing apparatus consisting of a combination of the tube and inclined blades for condensing the flour and retaining it while moving the barrel, substantially in the manner and for the purpose set forth. Secondly, I claim the hollow shaft for expelling the air from the barrel in packing, as above described. I also claim the self-acting clutch, in combination with the packing apparatus, in the manner above made known."

It becomes necessary to give a construction to these specifications in connection with the patent itself, in order to determine what the subject matter of the patent is, and thereby ascertain whether the patentee claims a combination of several things, or the distinct invention of several things, or both. His invention, as designated in the body of the patent, is a new and useful "Improvement in Flour Packers;" and he has declared in the specifications, that the utility of his invention consists in the increased expedition of packing flour by means of this improvement.

It has been laid down by an author of great merit, "that a patent for the improvement of a machine is the same thing as a patent for an improved machine. Improvement, applied to machinery, is where a specific machine already exists, and an addition or alteration is made, to produce the same effects in a better manner, or some new combinations are added to produce new effects. In such cases, the patent can only be for the improvement or new combination.—When an alleged invention purports to be an improvement of existing machinery, it is important to know whether it be a real or material improvement, or only a change of form. Hence it is necessary to ascertain, with as much accuracy as possible, the boundaries between what was known and used before, and what is new in the mode of operation.—The inquiry, therefore is not, whether the same elements of motion or the same component parts are used, or whether the given effect is produced substantially by the same mode of operation and the same combination of powers, in both machines; or whether some new element or combination has been added to the old machine, which produces either the same effect in a cheaper or more expeditious manner, or an entirely new effect." There is another rule of interpretation which obtains in cases of this kind, which is, that the patentee is presumed not to intend to claim things which he must know to be in use; and that his alleged invention must be considered, with reference to the condition of the art or manufacture to which it belongs, at the time such invention was made.

It is insisted, by the counsel for the plaintiff, that this patent is for three separate and distinct improvements, capable of being used together, or of distinct and independent use when allied with the old and well known apparatus; and that, even if the three alleged inventions are to be considered in combination, it is, nevertheless, insisted, that an invasion of either one, would be equally an infringement.—And this is put upon the ground, that each invention being claimed and conceded to be new, the patent covers not only the combination, but also the parts which compose the combination. The object which an inventor proposes to accomplish, is always the main guide, by which to determine whether the subject matter is a unit or not. It may consist of several distinct inventions, or several machines capable of useful operation separately; but if the inventor has brought them together for a purpose which can only be effected by their union, that purpose indicates the true character of the subject matter, when they are included in one patent which goes for the accomplishment of that purpose. Curt. Pat. § 109. In construing this patent and specifications together, with a view of ascertaining the purpose of the inventor, and his mode of accomplishing a given result, the subject matter, it seems to us, is clearly a unit. The claim of the patentee is for a combination of several things, which combination as a whole, constitutes the invention of

"an improvement in flour packers." In the schedule, the patentee, with great minuteness, describes the structure of "an improved apparatus," and the mode of operating it, not in separate parts, but as a whole, which improved machine, he says, supplies the great desideratum in packing flour in large mills, to wit, "expedition." It is immaterial what the claim of the inventor in his summary is, if the foundation for such claim is not made in the descriptive part of the specifications. The claiming of a part of the apparatus, consisting simply of a combination of the tube and inclined blades for condensing flour and retaining it, has no virtue as a distinct invention, because, the combination of the tube and blades alone, does not constitute an invention capable of useful operation, independent of the other apparatus. It is made effective only, by the vertical shaft revolving by means of the intricate arrangement of friction and mitre wheels—of collars, clutch, and levers, which, together with the moveable platform, operate, as a combined whole, to accomplish the great purpose of the inventor. That purpose is expedition in packing flour. From the condition of the art in 1849, (the time when this patent was issued,) the adjustment of inclined blades to a vertical revolving shaft for pressing, was an improvement well known, and had been in use since the exclusive right to such improvement was secured to Waterman and Learned, by letters patent issued on the 15th of April, 1838. In relation to retaining flour in the tube, while removing the packed barrel, the auger attached to the lower end of the shaft in Jonathan Barrett's machine, (invented in 1836,) undoubtedly, upon scientific principles, would produce that result; and the fact that such was the effect produced by the shaft and auger of Barrett's flour packer, is established by the testimony of Samuel Taggart and other witnesses. So that the devices, in the Kinman machine, of the vertical shaft with inclined blades for pressing, are old and well known contrivances, and can not be presumed to be embraced in the claim of the Kinman patent. But although the first claim in the summary, to wit, "the packing apparatus, consisting of a combination of the tube and inclined blades for condensing flour and retaining it," fails as a distinct invention, on the ground of its being incapable of useful separate operation, yet, we do not think the patentee has thereby so restricted his claim as to cover less than what he invented.

In Winans v. Denmead, 15 How. [56 U. S.] 330, it is said, that, "In this, as in most patent cases, founded on alleged improvements in machines, in order to determine what is the thing patented, it is necessary to inquire: "1st. What is the structure or device described by the patentee as embodying his invention? 2d. What mode of operation is introduced or employed by the structure or device? 3d. What result is obtained by means of this mode of operation? 4th. Do the specifications cover the described mode of operation by which the result is attained?"

Test the specifications, in this case, by these rules, and we think it easy to determine what the invention secured by the patent is. In the body of the specifications, the apparatus, constituting an improved flour packer, is described as a connected whole. Its mode of operation is also described as a connected whole; and the result attained is, in like manner, claimed from the combination of apparatus, operating in the manner and for the purpose set forth. The grant of the patent itself is for an "improvement in flour packers." It nowhere appears that the patent issued for separate improvements. The object of the patentee was to obtain a useful result, and the substance of his invention is a new mode of operation, by means of which that result is attained. It is this new mode of operation which gives it the character of an invention, and entitles the inventor to a patent; and this new modus operandi is, in view of the patent law, the thing entitled to protection.

We think the patentee has so framed his specifications, that his claim covers this new mode of operation, and that the grant of the patent is for an entire combination of the apparatus in a flour packing machine.

This construction of the Kinman patent and specification we believe to be in accordance with the doctrine established in the case of Prouty v. Ruggles, 16 Pet. [41 U. S.] 336. That was an action for an alleged infringement in the construction of plows, and the claim presented the three following divisions: 1st. The inclining of the standard and land side, so as to form an acute angle with the plane of the share. 2d. The placing the beam on a line parallel to the land side, within the body of the plow and its centre, nearly in the perpendicular of the center of resistance. 3d. The forming the top of the standard for brace and draft.

The plaintiff, in the circuit court, claimed damages for the infringement of their patent for "a new and useful improvement in the construction of a plow." The circuit court charged the jury, that unless it is proved that the whole combination is substantially used in the defendant's plows, it is not a violation of the plaintiff's patent; although one or more parts specified in the letters patent may be used in combination, by the defendants. The plaintiffs, by their specification and summing up, treated the parts described as essential parts of their combination, for the purpose of brace and draft; the use of either alone by the defendant would not be an infringement of the combination patented. The supreme court held that the instructions of the circuit court were correct; and the chief justice, in delivering the opinion of the court, says, that "the patent is for a combination, and the improvement consists in arranging different portions of the plow, and combining them together in the manner stat-

ed in the specification, for the purpose of producing a certain effect. The end in view is proposed to be accomplished by the union of all, arranged and combined together in the manner described; and this combination, composed of all the parts mentioned in the specification, and arranged with reference to each other and to other parts of the plow, in the manner therein described, is stated to be the improvement, and is the thing patented. The use of any two of these parts only, or two combined with a third, which is substantially different in the form, or in the manner of its arrangement with the others, is, therefore, not the thing patented. It is not the same combination, if it substantially differs from it in any of its parts." If, then, the Kinman patent is for a combination, the plaintiff in the case before us, can not recover for infringement, under the rule of construction established by the supreme court. It is in evidence that the flour packers used by the defendants, are machines constructed in all respects according to specifications contained in the patent to John T. Nage. Whether or not the augers upon the shaft are mechanical equivalents for the inclined blades in Kinman's machine, can make no difference. In all other respects, it is conceded, the two machines of the respective patentees, are entirely dissimilar in construction and in the mode of operation.

We are of the opinion that the defendants, in the use of their flour packers, have not infringed upon the plaintiff's rights, secured by the Kinman patent. Judgment for the defendant.